IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELANO GAMBLE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12−cv−1271−SCW |
| ) | |
| DR. NWAOBASI, J. SCHOENBECK, and ) | |
| WARDEN ATCHISON ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

## MEMORANDUM AND ORDER

**Williams, Magistrate Judge:**

*Pro se* Plaintiff Delano Gamble brought this case alleging that 1) Defendants Schoenbeck and Atchison improperly disciplined him after he was stabbed repeatedly during a fight in the prison yard on February 24, 2012 and 2) Defendant Nwaobasi was deliberately indifferent to his pain from his healing stab wounds. (Doc. 6). The case is now before the Court on Defendants' Actichson and Shoenbeck's Motion for Summary Judgment (Doc. 33), and Defendant Nwaobasi's Motion for Summary Judgment (Doc. 45) for failure to exhaust administrative remedies. For the following reasons, the Court **GRANTS** the Motions (Docs. 33 and 45) in Defendants' favor.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 17, 2012, Delano Gamble, currently an inmate at Stateville Correctional Center in Illinois, brought the instant suit pursuant to 42 U.S.C. § 1983 based on events at Menard Correctional Center. (Doc. 1) As relevant to these Motions, Plaintiff alleged that on February 24, 2012, an altercation took place on the west yard between two security threat groups (STG). (Doc. 1). Plaintiff claims he is not a member of either of the groups that were fighting, but

1

happened to have picked a poor time to make a phone call. (Doc. 1). Plaintiff was injured during the fighting and repeatedly stabbed. (Doc. 1). Subsequently, he was interviewed by internal affairs and disciplined. (Doc. 1). The disciplinary report found Plaintiff guilty of fighting. (Doc. 1). Plaintiff alleges that this violated his due process rights because he was simply in the wrong place at the wrong time. (Doc. 1). On or about March 7, 2012, Plaintiff was called to the health care unit to check the progress of his stab wounds. (Doc. 1). Plaintiff alleges that Nwaobasi failed to treat his pain resulting from the healing stab wounds. (Doc. 1). Plaintiff only saw Nwaobasi on March 7, 2012.

On May 17, 2013, Defendants Atchison and Schoenbeck filed the present *Pavey* Motion. (Doc. 33). Plaintiff filed his Response on June 18, 2013. (Doc. 41). Defendat Nwaobasi filed his Motion for Summary Judgment on August 21, 2013. (Doc. 45). Plaintiff filed his Response to that Motion on September 25, 2013. (Doc. 49). Additionally, although Plaintiff had named several unknown officers, he was never able to identify them, and the Court dismissed Plaintiff's claims against them on August 21, 2013. (Doc. 44). On October 31, 2013, the Court held a hearing on this matter.

### PLAINTIFF'S GRIEVANCES

Plaintiff submitted two grievances with his Complaint. The first one was dated May 8, 2012 and grieved the disciplinary report that Plaintiff received as a result of the fight on February 24, 2012. (Doc. 1, p. 29). No grievance officer's report is in the record. Plaintiff did not mark the grievance an emergency, and the warden did not sign it. (Doc. 1, p. 29). The ARB received this grievance on May 11, 2012, and rejected it for failure to include the grievance officer's response. (Doc. 1, p. 25). The ARB also noted that the grievance was undated. (Doc. 1, p. 35). The record contains another version of this grievance without a date on it. (Doc. 34-1, p. 1).

2

Plaintiff also submitted another grievance dated May 8, 2012 regarding the medical treatment he received on March 7, 2012. (Doc. 1, p. 35). Once again, the record contains no counselor's response, no grievance officer's response, and the grievance is not marked 'emergency.' (Doc. 1, p. 35). The warden did not sign this grievance. (Doc. 1, p. 35). The ARB also received this grievance on May 11, 2012 and rejected it for failure to include a counselor's response or a grievance officer's response. (Doc. 1, p. 24). The ARB report also contains a note indicating that they would only consider the grievance if it had been submitted to the officer within timeframe. (Doc. 1, p. 24).

Defendants submitted a third grievance dated August 8, 2012, also regarding Nwaobasi's medical care on March 7, 2012. (Doc. 46-1, p. 8). Although the grievance has a stamp indicating that it was received by the grievance office on August 16, 2012, no grievance officer's response is in the record. (Doc. 46-1, p. 8).

Plaintiff also submitted a number of kites with his Complaint, which he submitted as evidence that the grievance process was unavailable to him because two earlier grievances went unanswered. For example, he wrote his counselor on May 24, 2012 asked for the status of two grievances, which are not otherwise described. (Doc. 1, p. 11). He submitted a letter dated April 22, 2012 to Assistant Warden Kimberly Butler alleging that he had sent two grievances to his counselor on March 11, 2012 and asking for a status. (Doc. 1, p. 12). He submitted correspondence to the ARB informing them that he had written two grievances that he had not received a response from on March 13, 2012. (Doc. 1, p. 14). Plaintiff's counselor, Lori Oakley responded to Plaintiff's May 24, 2012 kite and indicated that she had not seen any grievances from Plaintiff for 2012. (Doc. 1, p. 16).

No grievances are reflected on Plaintiff's cumulative counseling summary between February 24, 2012 and May 30, 2012, when the summary indicates Plaintiff's counselor received and

responded to the kite asking about grievances. (Doc. 46-3, p. 5). The IGRV summary reflects no grievances between December 2000 and May of 2010. (Doc. 46-1, p.4).

### LEGAL STANDARDS

#### 1. *Summary Judgment Standard*

Summary judgment — which is governed by FEDERAL RULE OF PROCEDURE 56 — is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. **Dynegy Mktg. & Trade v. Multiut Corp., 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a))**.[1] The party seeking summary judgment bears the initial burden of demonstrating — based on the pleadings, affidavits and/or information obtained via discovery — the lack of any genuine issue of material fact. **Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)**. In the context of a hearing on failure to exhaust administrative remedies, the Court must resolve any factual disputes material to the exhaustion issue. **Pavey v. Conley, 544 F.3d 739, 742 (7th Cir. 2008)**.

#### 2. *PLRA's Exhaustion Requirement*

Lawsuits filed by prisoners are governed by 42 U.S.C. § 1997e, the Prison Litigation Reform Act ("PLRA"). The PLRA states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.[2] **42 U.S.C. § 1997e(a).** Failure to satisfy the PLRA's exhaustion requirement is an affirmative defense. **Pavey v. Conley, 544 F.3d 739, 740 (7th Cir. 2008).**

---

[1] Though Rule 56 was amended in 2010, the amendment did not change the summary judgment standard. **Sow v. Fortville Police Dept., 636 F.3d 293, 300 (7th Cir. 2011)**.

[2] It is clear that complaints about a prisoner's medical treatment are complaints about prison conditions for the purposes of the PLRA. **Witzke v. Femal, 376 F.3d 744, 751 (7th Cir. 2004) (citing Wilson v. Weiter, 501 U.S. 294, 299 n. 1 (1991) ("if an individual prisoner is deprived of needed medical treatment, that is a condition of his confinement")).**

Where the defense has been raised, the Seventh Circuit has set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all the necessary findings of fact without being bound by (or even informed of) any of the findings made by the district court in determining that the prisoner had exhausted his administrative remedies.

**Id. at 742.**

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. **Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).** An inmate must take all the steps required by the prison's grievance system to properly exhaust his administrative remedies. **Ford v. Johnson, 362 F.3d 395, 397 (7th Cir. 2004); Pozo v. McCaughtry, 286 F.3d 1022, 1023–24 (7th Cir. 2002).** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. **Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).** When officials have been afforded this opportunity, the prisoner has properly exhausted all available remedies. **Id.** But if prison administrators explicitly rely on a procedural shortcoming (like failing to follow the prison's exhaustion deadlines) in rejecting a prisoner's grievance, that procedural shortcoming amounts to a failure to exhaust. **Maddox v. Love, 655 F.3d 709, 722 (7th Cir. 2011).**

The contours of the exhaustion requirement are set by each state's prison grievance system, so the Court looks to Illinois law for the procedures relevant to the instant motion. **See Jones v. Bock, 549 U.S. 199, 218 (2007).**

### 3. Exhaustion Requirement under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Admin. Code § 504.800 et seq.** The grievance procedures first require inmates to speak with their Counselor about their complaint. **20 Ill. Admin. Code § 504.810(a)**. If the Counselor does not resolve the issue, the inmate must file a grievance form (directed to the Grievance Officer) within 60 days of the incident. **Id.** The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code § 504.810(b).** If the 60-day deadline has passed, the inmate is still invited to grieve: "[I]f an offender can demonstrate that a grievance was not timely filed for good cause, the grievance shall be considered." **20 Ill. Admin. Code § 504.810(a).**

"The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer," who "shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code § 504.830(d).** "If after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision." **20 Ill. Admin. Code**

§ 504.850(a). "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code § 504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code § 504.850(f)**.

Emergency grievances, however, are reviewed directly by the CAO, who determines whether "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." **20 Ill. Admin. Code § 504.840.** Once the CAO has informed the grieving inmate of its decision, the inmate may then appeal that decision to the Administrative Review Board ("ARB") on an expedited basis. **20 Ill. Admin. Code § 504.850(g).** A final decision of the ARB will exhaust the grievance requirement.

In certain circumstances, a prisoner may exhaust his remedies by filing a grievance directly with the ARB. **20 Ill. Adm. Code § 504.870**. Those circumstances include grievances addressing 1) placement in protective custody; 2) involuntary administration of psychotropic medication; 3) decisions regarding disciplinary proceedings that took place at an institution other than where the inmate currently resides; and 4) all other issues, with the exception of personal property issues, that occurred at a previous institution. *Id.*

### ANALYSIS

The undersigned did not find Plaintiff's testimony credible. Plaintiff testified that he submitted and copied the alleged timely missing grievances. However, no copies of those grievances are in the record. Additionally, it is clear that Plaintiff altered some of the records he submitted to the Court. For example, the ARB produced records in response to a subpoena showing that the grievance they received on May 11, 2012 regarding the disciplinary report was undated. But Plaintiff

7

submitted a copy of that grievance dated May 8, 2012. The Court also finds that the March and April letters submitted are fabrications. There is simply no indication that those letters were ever sent. There are no responses to the letters in the record, and they are not reflected on Plaintiff's cumulative counseling summary. Additionally, the letters are inconsistent. For example, Plaintiff claims he wrote to Asst. Warden Butler asking for a status of his missing grievances that he sent on March 11, 2012. But the March 13, 2012 correspondence to the ARB, allegedly about those same grievances, claims Menard had already lost those grievances and implies that they have been lost for more than a mere two days. In the absence of any convincing evidence, the Court finds that Plaintiff did not submit any grievances related to these issues prior to the May 8, 2012 grievances.

The Court also finds that the May 8, 2012 grievances are insufficient to exhaust Plaintiff's remedies. The events at issue occurred on February 24, 2012 and March 7, 2012. The May 8, 2012 grievances are out of time because they were submitted after sixty days had elapsed from the grieved-of conduct. Additionally, Plaintiff did not follow the proper procedure. Plaintiff needed to either submit the grievances to the grievance officer or file them as emergencies to the Warden. Instead, he sent them directly to the ARB, who properly rejected them for failure to follow the Illinois Administrative Code and submit the grievances at an institutional level. Plaintiff did not argue that one of the four exceptions that allow a prisoner to submit his grievances directly to the ARB applies here. The Court notes that Plaintiff did not inquire about the allegedly lost grievances with his counselor until after he received the ARB's rejection indicating that the grievances would be rejected as out of time unless he could produce a grievance officer's response from within the appropriate timeframe. This suggests that Plaintiff fabricated the correspondence after the fact to cover up his untimeliness. Additionally, the August 8, 2012 grievance, although at least initially submitted through the proper channels, is also untimely. For all of the above reasons, Plaintiff will not be deemed to have exhausted his administrative remedies through his own fault.

## CONCLUSION

For the foregoing reasons, Defendants' separate Motions for Summary Judgment (Docs. 33 and 45) are **GRANTED**. This case will be **DISMISSED without prejudice** for failure to exhaust administrative remedies

**IT IS SO ORDERED.**
**DATE: November 15, 2013**                              **/s/ *Stephen C. Williams***
                                                                                    **STEPHEN C. WILLIAMS**
                                                                                    United States Magistrate Judge